**United States District Court**
**Western District of New York**

_____

LAURA A. DUNDAS,

-v-

                                                           DECISION AND ORDER

MICHAEL J. ASTRUE,
Commissioner of Social Security,                  07-CV-6042 CJS

                           Defendant.

_____

**APPEARANCES**

For the Plaintiffs:                         Eugene D. Faughnan, Esq.
                                         Hinman, Howard
                                         700 Security Mutual Building
                                         80 Exchange Street
                                         PO Box 5250
                                         Binghamton, New York 13902-5250

For the Defendant:                      Terrance P. Flynn, Esq.
                                         United States Attorney for the
                                         Western District of New York
                                         Christopher V. Taffe, Esq.
                                         Assistant United States Attorney
                                         100 State Street
                                         Rochester, New York 14614

INTRODUCTION

     This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("Commissioner"), which denied

Plaintiff's application for disability insurance benefits.  Now before the Court is Plaintiff's motion for judgment on the pleadings [#10] and Defendant's cross-motion [#14] for the same relief.  For the reasons stated below, Defendant's application is denied, Plaintiff's application is granted, and this matter is remanded for further administrative proceedings.

## PROCEDURAL HISTORY

On or about March 4, 2004, Plaintiff applied for disability benefits, claiming to have become disabled due to bilateral carpal tunnel syndrome ("CTS"), reflex sympathetic dystrophy ("RSD"), and musculoskeletal neck and shoulder pain on May 3, 2001. (80).[1]  On April 23, 2004 the Commissioner denied the application. (40-43), and on June 6, 2005, a hearing was held before Administrative Law Judge James Bukes ("ALJ"). (413-38).  On May 3, 2006, the ALJ issued a written decision denying Plaintiff's claim. (9-27).  Plaintiff subsequently appealed, however, the Appeals Council declined to review the ALJ's determination. (5-7).  On January 11, 2007, Plaintiff commenced the instant action.  On November 30, 2007, Plaintiff filed the subject motion for judgment on the pleadings, and on April 16, 2008, Defendant filed the subject cross-motion for the same relief.

## VOCATIONAL HISTORY

Plaintiff was 54 years of age at the time of her hearing before the ALJ on June 6, 2005. Plaintiff, who obtained a GED and had paralegal training in college, worked as a hotel desk manager/auditor from May 1989 until May 2001. (81, 416-17). Plaintiff has

---

[1] Unless otherwise noted, citations are to the administrative record.

not worked since May 31, 2001. (417).

MEDICAL EVIDENCE

The medical evidence involved in this case is described in detail in the parties' submissions and need not be repeated here. It is sufficient for purposes of this Decision and Order to note the following facts.

In late 1998, Plaintiff complained to Dr. Mark Mauer, M.D. ("Mauer"), her treating physician, of wrist, hand, and finger pain. (209-221). Mauer attributed Plaintiff's hand and arm pain to CTS. In March 2003, Plaintiff saw Mauer and complained of soreness "from the hips down." (184). Mauer attributed the soreness to arthritis and prescribed Tylenol for the pain. (184). Plaintiff subsequently complained of soreness at other times, and Mauer attributed such pain to a variety of causes, including arthritis, fibromyalgia, and RSD.

In 1999, Mauer referred Plaintiff to Thomas Olenginski, M.D. ("Olenginski"), a specialist in rheumatology. Olenginski conducted various blood tests and found no abnormality. (140).

In January 2004, EMG/NCV studies confirmed that Plaintiff suffered from significant bilateral CTS. (165). Plaintiff's neurologist, Dr. Caren Douenias, M.D. ("Douenias"), indicated that conservative measures were not working, and that Plaintiff should consider surgery. (165).

In April 2004, Plaintiff was examined by non-treating consultative orthopedic specialist Dr. Manar Hanna, M.D. ("Hanna"). (272-76). Plaintiff told Hanna that she was able to do "cooking, cleaning, laundry, shopping, showering, bathing, and dressing" of

herself. (273).  Hanna conducted a physical examination, and noted that Plaintiff did not need help getting on or off the examining table, and that she had full hand grip strength bilaterally. (273).  Hanna found that Plaintiff had no back pain or tenderness.  Hanna concluded that Plaintiff's physical exam was essentially normal, although he agreed with a diagnosis of bilateral CTS.  In that regard, Hanna stated that Plaintiff would have "mild restriction for activities requiring extensive fine manipulation of the bilateral hands." (274).  Hanna further stated that a "diagnosis of [RSD] reflex sympathetic dystrophy [was] extremely unlikely." (274).

On October 11, 2004, Mauer examined Plaintiff after she requested that he fill out forms in support of her application for disability benefits.  Mauer reported that Plaintiff suffered from coronary artery disease, hyperlipoproteinemia, hypertension, anxiety, depression, arthritis, and bilateral CTS. (329). On December 20, 2004, Mauer completed a Medical Assessment of Ability to do Work-Related Activities and reported that Plaintiff could not: lift more than ten pounds, sit for more than two hours in an eight hour workday (or ten minutes at one time), stand for more than four hours in an eight hour workday (or one hour at one time), or walk for more than two hours in an eight hour workday (or fifteen minutes at one time). (361-64).  As part of that report, Mauer was asked to list, among other things, the clinical findings and laboratory findings that supported his opinions.  However, Mauer did not complete that portion of the report. (360).  Elsewhere in his report, though, Mauer indicated that his assessment was supported by Plaintiff's subjective complaints of hip and leg pain. (362).

In February 2005, Dr. Harris Silver, M.D. ("Silver") performed carpal tunnel release surgery on Plaintiff's right hand.  On March 9, 2005, twelve days later, Silver

examined Plaintiff, and found that her grip strength was decreased. On June 1, 2005, Plaintiff returned to see Silver, who completed a Medical Assessment of Ability to do Work-Related Activities. Silver stated that Plaintiff could lift and carry up to twenty pounds occasionally, and use her hands for activities such as grasping and fine manipulation occasionally. (371-74). Silver also indicated that Plaintiff's ability to sit, stand and walk were not affected by her impairments, however, it does not appear that Silver's report was intended to address anything besides Plaintiff's CTS condition. (371-74).

## STANDARDS OF LAW

42 U.S.C. § 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

For purposes of the Social Security Act, disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Schaal*, 134 F.3d at 501.

> The SSA has promulgated administrative regulations for determining when a claimant meets this definition. First, the SSA considers whether the claimant is currently engaged in substantial gainful employment. If not, then

> the SSA considers whether the claimant has a "severe impairment" that significantly limits the "ability to do basic work activities. If the claimant does suffer such an impairment, then the SSA determines whether this impairment is one of those listed in Appendix 1 of the regulations. If the claimant's impairment is one of those listed, the SSA will presume the claimant to be disabled. If the impairment is not so listed, then the SSA must determine whether the claimant possesses the "residual functional capacity" to perform his or her past relevant work. Finally, if the claimant is unable to perform his or her past relevant work, then the burden shifts to the SSA to prove that the claimant is capable of performing "any other work."

*Schaal*, 134 F.3d at 501 (Citations omitted). At step five of the five-step analysis above, the Commissioner may carry his burden by resorting to the Medical Vocational Guidelines or "grids" found at 20 C.F.R. Pt. 404, Subpart P, Appendix 2. *Pratts v. Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996)(citation omitted); *see also,* SSR 83-10 (Noting that in the grids, "the only impairment-caused limitations considered in each rule are exertional limitations.") However, if a claimant has nonexertional impairments which "significantly limit the range of work permitted by his exertional limitations," then the Commissioner cannot rely upon the grids, and instead "must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain or perform."[2] *Pratts v. Chater*, 94 F.3d at 39; *see also*, 20 C.F.R. § 416.969a(d).[3]

---

[2]"Exertional limitations" are those which affect an applicant's ability to meet the strength demands of jobs, such as sitting, standing, walking, lifting, carrying, pushing, and pulling. "Non-exertional limitations" are those which affect an applicant's ability to meet job demands other than strength demands, such as anxiety, depression, inability to concentrate, inability to understand, inability to remember, inability to tolerate dust or fumes, as well as manipulative or postural limitations, such as the inability to reach, handle, stoop, climb, crawl, or crouch. 20 C.F.R. 416.969(a).

[3]20 C.F.R. § 416.927(d) provides, in relevant part, that, "[w]hen the limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect your ability to meet both the strength [exertional] and demands of jobs other than the strength demands [nonexertional], we consider that you have a combination of exertional and nonexertional limitations or restrictions. . . . [W]e will not directly apply the rules in appendix 2 [the grids] unless there is a rule that directs a conclusion that you are disabled based upon your strength limitations; otherwise the rule provides a framework to guide our decision."

Under the regulations, a treating physician's opinion is entitled to controlling weight, provided that it is well-supported in the record:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 416.927(d)(2); 20 C.F.R. § 404.1527(d)(2).  However, "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling.  And the less consistent that opinion is with the record as a whole, the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)(*citing* 20 C.F.R. § 404.1527(d)(4)).

## THE ALJ'S DECISION

At the first step of the five-step sequential analysis described above, the ALJ found that Plaintiff was not engaged in substantial gainful employment. (13). At the second step of the analysis, the ALJ found that Plaintiff had the following severe impairments: bilateral CTS, coronary artery disease, and musculoskeletal pains. (13). At the third step of the sequential analysis, the ALJ found that Plaintiff's impairments did not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P ("the Listings")(20 C.F.R. §§404.1520(d), 404.1525, 404.1526). (15).

At the fourth step of the analysis, the ALJ made the following RFC determination:

> [T]he claimant has the capacity for light work. She must avoid work requiring a high degree of dexterity and feeling with the hands. She must avoid rapid movement with the hands and only use the hands occasionally. She has no restrictions on her ability to stand, sit, or walk and is capable of occasional grasping, manipulation, reaching, handling, feeling, and pushing/pulling, but is limited from <u>repetitive</u> use of the hands. Additionally, she can only lift 10 pounds and use the dominant hand as a

helping hand.

(18). In making this RFC determination, the ALJ essentially rejected Mauer's opinions concerning RSD, fibromyalgia and arthritis. For example, although Mauer referred to a possible diagnosis of RSD, the ALJ found that "absolutely no clinical or diagnostic findings were provided to confirm such a diagnosis." (14). Similarly, the ALJ noted that although Mauer had indicated that Plaintiff might have rheumatoid arthritis, such a diagnosis was disproved by Dr. Olenginski's testing. (16). The ALJ also found that Mauer's diagnosis of fibromyalgia was unsupported. (17). The ALJ accepted, for the most part, Silver's opinions concerning Plaintiff's physical limitations, yet rejected Silver's conclusion that Plaintiff was unable to perform any type of work. (22-25). The ALJ also found that Plaintiff's "statements concerning the intensity, duration and limiting effects of [her] symptoms [were] not entirely credible." (24).

At the fifth step of the sequential analysis, the ALJ concluded that Plaintiff could perform "semi-skilled work at the light exertional level" and "semi skilled work at the sedentary exertional level." (26). In that regard, the ALJ relied on the testimony of a vocational expert ("VE"), who testified that, based upon the ALJ's RFC assessment, Plaintiff could perform a number of jobs in the national economy. Moreover, the VE testified that, even assuming that Plaintiff was limited in her ability to sit, stand and walk, that Plaintiff could perform the jobs of hostess, information clerk, and telephone solicitor. (437). Consequently, the ALJ concluded that Plaintiff was not disabled.

ANALYSIS

In this action, Plaintiff claims that the ALJ erred in three respects. First, Plaintiff alleges the Administration improperly discounted the opinions of her treating physicians.

Specifically, she maintains that the ALJ's discounting of Mauer's and Silver's opinions resulted in an incorrect conclusion regarding her residual functional capacity. Additionally, Plaintiff argues the Administration improperly discounted her allegations of disabling pain and other non-exertional impairments. Finally, Plaintiff argues that the Administration failed to sustain its burden at step five of the sequential evaluation process.

The ALJ's decision is generally thorough and well-reasoned, based on the present record.  Nevertheless, the Court finds that the ALJ erred in three respects. First, the ALJ failed to re-contact Dr. Mauer before giving Mauer's medical opinion little weight.  In that regard, the Commissioner's regulations, 20 C.F.R. 404.1512(e), state:

> When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, *or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques*.  We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source.  In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.
>
> (2) We may not seek additional evidence or clarification from a medical source when we know from past experience that the source either cannot or will not provide the necessary findings.

20 C.F.R. 404.1512(e) (emphasis added).  Here, the ALJ correctly noted that Mauer's opinions regarding arthritis, reflex sympathetic dystrophy and fibromyalgia were

unsupported in Mauer's records, and that, consequently, there did not appear to be any basis for Mauer's conclusions concerning restrictions on Plaintiff's ability to sit, stand and walk, apart from Plaintiff's subjective complaints of pain.  Nevertheless, before rejecting Mauer's opinions, the ALJ should have attempted to expand the record, as described in 20 C.F.R. 404.1512(e).  Accordingly, the case must be remanded for further administrative proceedings.  In that regard, upon remand, the ALJ should ask Mauer to explain the basis for his opinion that Plaintiff can sit for no more than two hours in an eight hour workday (or ten minutes at one time), stand for no more than four hours in an eight hour workday (or one hour at one time), and walk for no more than two hours in an eight hour workday (or fifteen minutes at one time). To the extent that Dr. Mauer is basing his opinion on diagnoses of RSD, fibromyalgia, arthritis, or osteoporosis, he should explain the basis for such diagnoses, including the laboratory and diagnostic techniques used to make the diagnoses.[4]

      Second, the Court finds that the hypothetical question that the ALJ posed to the VE was incomplete with regard to Plaintiff's alleged inability to walk for long periods of time.  In an alternative hypothetical question that was purportedly based on Mauer's RFC report, the ALJ told the VE to assume that Plaintiff could "stand for four hours, walk for two hours," in the course of an eight-hour workday. (436).  However, the ALJ did not include Mauer's limitation that Plaintiff could walk for only 15 minutes at a time. (362).  Therefore, upon remand the ALJ should be sure that his hypothetical questions to the VE accurately reflect the medical opinions upon which the ALJ's RFC

---

[4]In that regard, objective findings are not required. *See, Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) ("As a general matter, 'objective' findings are not required in order to find that an applicant is disabled.") (citations omitted).

assessment is based.

Finally, upon remand the ALJ should clarify whether he considered all of the factors listed in 20 CFR § 404.1529(c) when he evaluated Plaintiff's credibility. (24-25).

## CONCLUSION

For the reasons discussed above, Defendant's application [#14] is denied, Plaintiff's application [#10] is granted, and this matter is remanded for further administrative proceedings consistent with this Decision and Order, pursuant to 42 U.S.C. § 405(g), sentence four.

So Ordered.

Dated: Rochester, New York
September 12, 2008

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge